Josephine Linker Hart, Justice, dissenting. While the majority pays lip service to the requirement that this court strictly construe criminal statutes, it ignored the clearly stated intent of the legislature and substituted its own opinion of how our DWI laws should be structured.- Typical of when this court ignores the law, the majority attempts to justify its action as an attempt to avoid an “absurd” result. I respectfully dissent. When, as in the case before us, a driver is stopped at a sobriety checkpoint, and he or she refuses to submit to a blood test, the plain wording of Arkansas Code Annotated section 5-65-205 applies. The phrase, “no chemical test shall be given,” means exactly that. This is a circumstance in which no one, not even the driver himself, has been injured. While it is absolutely an intolerable error in judgment to drive after drinking, and I do not want to in any |1fiway suggest that I am endorsing the practice, this circumstance is the lowest-level violation of our DWI laws. Obviously, this is a less serious offense than the circumstance in which someone has been killed. Our legislature so wisely recognized that, in circumstances where human life has been lost, or is in danger of being lost, allowing a driver to withdraw his or her consent to a chemical test is not reasonable. Ark.Code Ann. § 5-65-208.[1] |17I disagree that it is “illogical” for the legislature. to forbid all chemical testing after a section 5-65-205 refusal to submit and then mandate it under section 5-65-208. This is not “illogical,” but consistent with the requirements of our federal and state constitutions that the search not be unreasonable. Unreasonable means that the government intrusion is disproportionate to the seriousness of the offense. Even where a driver submits to chemical testing, the legislature only permits the police to administer the test if they have “reasonable cause” to believe that the driver has a blood-alcohol level of .08. Ark.Code Ann. § 5-65-20 (Repl. 2005). Moreover, the refusal to submit carries a significant penalty and does not bar the prosecution of a driver for driving while intoxicated.[2] Here, there was substantial evidence of intoxication provided by Metz-ner’s reaction to the sobriety checkpoint, the odor of intoxicants about his person, and his unsteadiness on his feet, and the circuit judge so found this evidence supported the conviction.[3] |islt is disconcerting that the majority has shirked its duty by ignoring both our federal and state constitutions and interprets a criminal statute in a way that empowers the State to intrude into the lives of its citizens in ways that the people, through their elected legislature, clearly did not authorize. The Fourth Amendment to the United States Constitution and article 2, section 15, of the Arkansas Constitution are virtually identical. I recognize that impaired driving must be curtailed to preserve the safety and well-being of the people, however, our constitutions recognize that the mechanism for dealing with such conduct — government intrusion into the lives of its citizens — is a powerful and oppressive tool that must be used with great restraint. That is why they guarantee that the people “be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.” The key •word is “unreasonable.” The most intrusive of all searches is the search of the interior of a person’s body. A search incident to arrest of a person’s body is governed by Arkansas Rule of Criminal Procedure 12.3. While Rule 12.3 deals specifically with warrantless searches, it is nonetheless instructive. It states: (a) Search of an accused’s blood stream, body cavities, and subcutaneous tissues conducted incidental to an arrest may be made only: (i) if there is a strong probability that it will disclose things subject to seizure and related to the offense for which the individual was arrested; and 119(ii) if it reasonably appears that the delay consequent upon procurement of a search warrant would probably result in the disappearance or destruction of the objects of the search; and (iii) if it reasonably appears that the search is otherwise reasonable under the circumstances of the case, including the seriousness of the offense and the nature of the invasion of the individual’s person. (b) Any search pursuant to this rule shall be conducted by a physician or a licensed nurse. In large part, the “reasonableness” of a search of a person’s blood is determined by the circumstances of the case and the seriousness of the offense. The General Assembly determined that intoxication is defined by a blood-alcohol level of 0.8. Ark.Code Ann. § 5-65-103. It also determined how that the blood alcohol content of a person’s bloodstream may be determined and under what circumstances it is reasonable to make a test of a driver’s blood mandatory. Ark.Code Ann. §§ 5-65-204 & 208. It is not for the courts to usurp the power of the legislature by ignoring the plain wording of a statute. Baker, J., joins. . (a) When the driver of a motor vehicle is involved in an accident resulting in loss of human life or when there is reason to believe death may result, in addition to a penalty established elsewhere under state law, a chemical test of the driver’s blood, breath, saliva, or urine shall be administered to the driver, even if fatally injured, to determine the presence of and percentage of alcohol concentration or the presence of a controlled substance, or both, in the driver's body. (b)( 1) The law enforcement agency that investigates an accident described in subsection (a) of this section, the physician in attendance, or any other person designated by state law shall order the chemical test as soon as practicable. (2)(A) The person who conducts the chemical test under subsection (a) of this section of the driver’s blood, breath, saliva, or urine shall forward the results of the chemical test to the Department of Arkansas State Police, and the department shall establish and maintain the results of the chemical tests required by subsection (a) of this section in a database. (B) The information in the database shall reflect the number of fatal motor vehicle accidents in which: (i) Alcohol was found to be a factor, with the percentage of alcohol concentration involved; (ii) Controlled substances were found to be a factor, listing the class of controlled substances so found and their amounts; and (iii)Both alcohol and controlled substances were found to be factors, with the percentage of alcohol concentration involved, and listing the class of controlled substances so found and their amounts. (c) The results of the chemical tests required by this section shall be reported to the department and may be used by state and local officials for statistical purposes that do not reveal the identity of the deceased person or for any law enforcement purpose, including prosecution for the violation of any law. . Our DWI statute provides for alternative ways of convicting a person of operating a motor vehicle while intoxicated. Arkansas Code Annotated section 5-65-103 states as follows: (a) It is unlawful and punishable as provided in this chapter for any person who is intoxicated to operate or be in actual physical control of a motor vehicle. (b) It is unlawful and punishable as provided in this chapter for any person to operate or be in actual physical control of a motor vehicle if at that time the alcohol concentration in the person's breath or blood was eight-hundredths (0.08) or more based upon the definition of alcohol concentration in § 5-65-204. . Interestingly, the circuit judge who also issued the search warrant for Metzner's blood did not merely pronounce Metzner guilty, as is customary in criminal trials. Instead, the circuit judge made detailed findings of fact, that did not mention the only basis that the State argued for finding Metzner guilty of DWI — his chemical test showed that his blood-alcohol level exceeded .08. Despite issuing a search warrant for taking Metzner's blood, the circuit judge also found Metzner guilty of refusal to submit to a chemical test.